TEZ Law Firm, A Professional Corporation
JJ ZHANG, ESQ. (SBN 326666)
Email: jj@tezlawfirm.com
4141 S Nogales Street C102
West Covina, CA 91792
Telephone No.: (626) 678-8677
Facsimile No.: (909) 598-1788
Attorney for Petitioner-Plaintiff
QINGMEI LIN (A# 242-523-801)

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

**QINGMEI LIN,**
Petitioner-Plaintiff,
vs.

**WARDEN,** Adelanto ICE Processing Center, in his or her official capacity;

**FIELD OFFICE DIRECTOR,** Los Angeles Field Office, U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations, in his or her official capacity;

**DAVID J. VENTURELLA,** Acting Director, U.S. Immigration and Customs Enforcement, in his official capacity;

**MARKWAYNE MULLIN,** Secretary, U.S. Department of Homeland Security, in his official capacity;

**TODD BLANCHE,** Attorney General of the United States, in his official capacity;

**U.S. DEPARTMENT OF HOMELAND SECURITY;** and **U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT,**

Respondents-Defendants.

Case No.: ____________________

**PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241; 8 U.S.C. §§ 1357(a)(2), 1226(a); FOURTH AND FIFTH AMENDMENTS; ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706; COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

**IMMEDIATE RELEASE REQUESTED**

**EXPEDITED CONSIDERATION REQUESTED PURSUANT TO 28 U.S.C. § 2243**

A# 242-523-801

Detained at: Adelanto ICE Processing Center, Adelanto, California

# I. INTRODUCTION

1. This is a petition for a writ of habeas corpus under 28 U.S.C. § 2241, and a complaint for declaratory and injunctive relief, brought on behalf of Petitioner-Plaintiff Qingmei Lin. Ms. Lin is a native and citizen of the People's Republic of China who was inspected and admitted to the United States on a nonimmigrant visa in or about May 2026. Within months of her arrival she did what Congress invites any person physically present in the United States to do, "irrespective of such alien's status": she applied for asylum. 8 U.S.C. § 1158(a)(1). She filed a Form I-589 with U.S. Citizenship and Immigration Services ("USCIS"), gave the government her home address in South Pasadena, California, and waited for instructions. She has no criminal history of any kind.

2. The instructions came. By a Form I-797C notice dated September 4, 2026, USCIS, a component of Respondent U.S. Department of Homeland Security ("DHS"), directed Ms. Lin to appear at 9:00 a.m. on September 21, 2026, at its Application Support Center at 17843 Colima Road, City of Industry, California, so that the agency could collect her fingerprints. The notice told her that the appointment was required "[t]o process your application," and it warned her that if she failed to appear USCIS could dismiss her asylum application or refer it to an immigration judge. Ms. Lin appeared at the time and place the government chose. Immigration officers, on information and belief officers of U.S. Immigration and Customs Enforcement ("ICE"), another component of the same Department, arrested her there. They showed her no warrant. She has been in Respondents' custody ever since and is confined at the Adelanto ICE Processing Center. She seeks immediate release.

3. Ms. Lin's confinement is unlawful for four independent reasons. First, she was arrested without a warrant in violation of 8 U.S.C. § 1357(a)(2), and Respondents therefore hold her without statutory authority. A warrantless civil immigration arrest is lawful only where the officer has reason to believe both that the person is in the United States in violation of the immigration laws and that she "is likely to escape before a warrant can be obtained for [her] arrest." 8 U.S.C. § 1357(a)(2); 8 C.F.R. § 287.8(c)(2)(ii). No officer could have believed that a woman who had just walked into a federal office, at an hour the government itself had fixed seventeen days earlier, was likely to escape in the time it takes an authorized ICE officer to sign an administrative warrant. Nineteen days before Ms. Lin was seized, this Court found a likelihood of success on the claim that warrantless arrests made in this District without an individualized, prearrest escape-risk determination violate "the clear dictates of Section 1357 and its corresponding regulation," and it

enjoined them. *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP (C.D. Cal. Sept. 2, 2026), ECF No. 738, at 33, 53-54. The consequence reaches her present custody. Congress authorized pre-removal detention "[o]n a warrant issued by the Attorney General," 8 U.S.C. § 1226(a), and the only other route into that custody is a warrantless arrest that satisfies § 1357(a)(2). Ms. Lin's detention rests on neither.

4. Second, the seizure violates the Fourth Amendment. The Fourth Amendment requires probable cause to seize or detain a person for a civil immigration violation, and it requires that a warrantless seizure be followed promptly by a neutral determination of probable cause. On information and belief, the officers who seized Ms. Lin lacked probable cause to believe that she was removable, and no neutral decisionmaker has ever reviewed the seizure.

5. Third, the confinement violates the Due Process Clause of the Fifth Amendment. No official has ever made an individualized determination that Ms. Lin is dangerous or that she will not appear. The only fact the government acted on is the one fact that negates flight risk: she showed up. And the government's use of its own summons to obtain custody of her offends the basic fairness the Due Process Clause guarantees. The government commanded Ms. Lin's appearance under threat of forfeiting her asylum application, and then used her compliance as the occasion to take her liberty. A summons that operates as a trap is not due process of law.

6. Fourth, Respondents' conduct violates the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2). The arrest and the custody determination that followed are contrary to § 1357(a)(2) and its implementing regulation, for the reasons this Court gave in *Vasquez Perdomo*. They are also arbitrary and capricious, because they rest on an inconsistent policy that the agency has never acknowledged or explained. A single Department told Ms. Lin that appearing for biometrics was a required step toward having her application adjudicated and that the consequence of not appearing would be dismissal or referral to an immigration judge. The same Department treated her appearance as the trigger for arrest and detention. Nothing in the asylum statute, in the regulations governing affirmative asylum applications, in the appointment notice, or in any published policy tells an applicant that complying with a biometrics notice will result in imprisonment. Whether that conduct is an unexplained departure from the Department's established asylum-processing framework, or the implementation of an undisclosed enforcement policy at odds with the statutory and regulatory warrant requirements, it is not the product of

reasoned decisionmaking. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009); *Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221-22 (2016).

7. Ms. Lin accordingly pleads five counts. Count I alleges that she was arrested in violation of 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8(c)(2) and is therefore in custody without the statutory authority 8 U.S.C. § 1226(a) requires, and seeks immediate release under 28 U.S.C. § 2241. Count II alleges that her seizure violates the Fourth Amendment. Count III alleges that her confinement violates the Due Process Clause of the Fifth Amendment. Each likewise seeks immediate release. Count IV seeks relief under the APA as to her arrest and custody determination and as to the unlawful and inconsistent policy they applied. Count V, pleaded in the alternative and only if the Court declines immediate release, seeks a prompt custody determination at which Respondents must justify her continued confinement.

8. Ms. Lin respectfully asks this Court to issue an order to show cause forthwith and to order her immediate release on her own recognizance or on reasonable conditions of supervision.

## II. JURISDICTION

9. This action arises under the Constitution of the United States, the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, the federal habeas corpus statute, 28 U.S.C. § 2241, and the APA, 5 U.S.C. §§ 551 *et seq.* and 701 *et seq.*

10. This Court has habeas jurisdiction under 28 U.S.C. § 2241(c)(1) and (c)(3). Ms. Lin is in custody under or by color of the authority of the United States, and she is in custody in violation of the Constitution and laws of the United States. The Court has federal question jurisdiction under 28 U.S.C. § 1331. Jurisdiction is further secured by Article I, Section 9, Clause 2 of the Constitution, the Suspension Clause, which guarantees a forum in which to test the legality of executive detention. *See Boumediene v. Bush*, 553 U.S. 723, 739, 745-46 (2008); *INS v. St. Cyr*, 533 U.S. 289, 301, 305 (2001). Ms. Lin is "in custody" because she is physically confined by Respondents at the Adelanto ICE Processing Center, and release from unlawful physical restraint is the historic core of the writ. *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).

11. No jurisdiction-stripping provision of the INA bars this action. Section 1252(b)(9) channels review of claims "arising from any action taken or proceeding brought to remove an alien," and that provision does not reach claims challenging the lawfulness of immigration detention, as distinct from challenges to removal itself. *Jennings v. Rodriguez*, 583 U.S. 281, 293-95 (2018) (plurality opinion); *see Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S.

1, 19 (2020) (§ 1252(b)(9) is no bar where the parties are not asking for review of an order of removal, the decision to seek removal, or the process by which removability will be determined). Section 1252(g) reaches only three discrete actions, the decision or action to "commence proceedings, adjudicate cases, or execute removal orders," and is to be read narrowly. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Ms. Lin does not challenge the decision to commence removal proceedings against her, and she does not ask this Court to enjoin, terminate, or review those proceedings. She challenges her arrest and her physical confinement, which are not among the actions § 1252(g) enumerates.

12. Section 1226(e) provides that the Attorney General's "discretionary judgment regarding the application of this section shall not be subject to review," but Ms. Lin does not ask this Court to review a discretionary judgment about whether to grant bond or in what amount. She contends that the statutory predicate for detention under § 1226(a) was never satisfied and that her seizure violated the Constitution, which are questions of law. *See Demore v. Kim*, 538 U.S. 510, 516-17 (2003) (§ 1226(e) does not bar a challenge to "the statutory framework that permits [the petitioner's] detention without bail"). The second sentence of § 1226(e), which provides that no court may set aside any action or decision "under this section" regarding detention or the denial of bond, is likewise confined to discretionary determinations and does not withdraw habeas jurisdiction over constitutional claims or questions of law. *See Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011); *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017). Section 1252(a)(2)(B)(ii) is inapplicable because the escape-risk finding required by § 1357(a)(2) is a statutory precondition to a warrantless arrest, not a decision "specified under this subchapter to be in the discretion of" the Secretary.

13. Section 1252(f)(1) does not bar the relief Ms. Lin seeks. As to the arrest, the relevant provision is 8 U.S.C. § 1357, which is not among the provisions § 1252(f)(1) enumerates; it lies in a separate part of the subchapter. This Court so held in addressing the identical question. *Vasquez Perdomo*, ECF No. 738, at 50-51. As to any relief that touches 8 U.S.C. § 1226, including the alternative custody-hearing relief sought in Count V, § 1252(f)(1) by its own terms excepts relief "with respect to the application of such provisions to an individual alien." Ms. Lin seeks relief for herself alone and on her own facts, which is the individualized relief the statute preserves. *See Garland v. Aleman Gonzalez*, 596 U.S. 543, 550-51 (2022) (classwide injunctions there fell outside the exception because they "were entered on behalf of entire classes of aliens").

14. This Court has jurisdiction over the APA claim pleaded in Count IV. The waiver of sovereign immunity in 5 U.S.C. § 702 reaches claims for non-monetary relief against federal agencies and against federal officers sued in their official capacities. Finality and the adequate-remedy question under 5 U.S.C. § 704 are addressed in Count IV itself. The Court may award declaratory relief under 28 U.S.C. §§ 2201-2202 and may issue writs in aid of its jurisdiction under 28 U.S.C. § 1651.

15. There is no final administrative order of removal against Ms. Lin, and she does not seek review of any removal order or of any determination regarding her removability. The channeling provisions of 8 U.S.C. § 1252(a)(5) and (b)(9) therefore have no application to the relief requested.

## III. VENUE

16. Venue is proper in this District under 28 U.S.C. § 1391(e)(1) because Respondents are agencies of the United States and officers and employees of the United States acting in their official capacities, and a substantial part of the events giving rise to Ms. Lin's claims occurred in this District. Venue is also proper under the immediate-custodian and district-of-confinement rules governing core habeas petitions challenging present physical confinement. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434-35, 442-43 (2004). Ms. Lin resided in South Pasadena, Los Angeles County; she was arrested at the USCIS Application Support Center in City of Industry, Los Angeles County; and she is confined at the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, San Bernardino County, California 92301. Each of those places lies within the Central District of California, and San Bernardino County lies within its Eastern Division.

## IV. REQUIREMENTS OF 28 U.S.C. §§ 2241 AND 2243

17. Upon the filing of a habeas petition, the Court must award the writ or issue an order to show cause "forthwith" unless it appears from the application that the applicant is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause issues, the person to whom it is directed must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed," and must make a return "certifying the true cause of the detention." *Id.* The Court is then directed to "summarily hear and determine the facts, and dispose of the matter as law and justice require." *Id.*

18. The obligation to certify the true cause of the detention is significant here. Ms. Lin's central contention is that no lawful cause exists. The statute places on Respondents the burden of stating the authority under which they hold her, including whether any warrant of arrest existed

before she was seized and what particularized facts, if any, an officer relied upon to conclude that she was likely to escape before one could be obtained.

19. The compressed deadlines reflect the historic office of the writ, long described as "perhaps the most important writ known to the constitutional law of England, affording as it does a swift and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (citation omitted), *abrogated on other grounds by Coleman v. Thompson*, 501 U.S. 722 (1991). Ms. Lin therefore requests that the Court issue an order to show cause requiring Respondents to respond within three days and set an expedited hearing.

## V. PARTIES

20. Petitioner-Plaintiff Qingmei Lin (A# 242-523-801) is a native and citizen of the People's Republic of China. She was inspected and admitted to the United States on a nonimmigrant visa in or about May 2026 and has an application for asylum and for withholding of removal pending. Before her arrest she resided at 321 Pasadena Avenue, Apartment A, South Pasadena, California 91030. She is presently detained by Respondents at the Adelanto ICE Processing Center, 10400 Rancho Road, Adelanto, California 92301.

21. Respondent Warden of the Adelanto ICE Processing Center is the official responsible for the operation and administration of the facility in which Ms. Lin is confined. He or she exercises day-to-day physical custody over Ms. Lin, is her immediate custodian for purposes of 28 U.S.C. § 2241, and has the ability to produce her and to carry out an order of release. The Warden is sued in his or her official capacity and is named as a habeas respondent only. Counsel will substitute the officeholder's name promptly upon confirmation. *See* Fed. R. Civ. P. 17(d), 25(d).

22. Respondent-Defendant Field Office Director of the Los Angeles Field Office of ICE Enforcement and Removal Operations, 300 North Los Angeles Street, Los Angeles, California 90012, is sued in his or her official capacity. The Field Office Director exercises authority over civil immigration arrests and custody determinations in this District, including at the Adelanto ICE Processing Center, which is operated under contract with ICE, and is a legal custodian of Ms. Lin.

23. Respondent-Defendant David J. Venturella is the Acting Director of ICE and is sued in his official capacity. He is responsible for the policies, practices, and operations of ICE nationwide, including its warrantless-arrest and custody practices, and is a legal custodian of Ms. Lin.

24. Respondent-Defendant Markwayne Mullin is the Secretary of Homeland Security and is sued in his official capacity. He is responsible for the administration and enforcement of the

immigration laws, exercises supervisory authority over both ICE and USCIS, and is a legal custodian of Ms. Lin.

25. Respondent-Defendant Todd Blanche is the Attorney General of the United States and is sued in his official capacity. He oversees the Executive Office for Immigration Review, including the immigration judges who conduct custody redetermination hearings under 8 U.S.C. § 1226(a), and is named so that complete relief may be afforded on the alternative claim pleaded in Count V.

26. Defendant U.S. Department of Homeland Security is the federal agency charged with administering and enforcing the immigration laws. Its component USCIS received Ms. Lin's asylum application and issued the notice directing her to appear on September 21, 2026. On information and belief, its component ICE arrested her at that appointment; ICE now detains her. DHS is an "agency" within the meaning of 5 U.S.C. § 701(b)(1).

27. Defendant U.S. Immigration and Customs Enforcement is the component of DHS responsible for civil immigration arrests and detention. ICE is an "agency" within the meaning of 5 U.S.C. § 701(b)(1).

## VI. EXHAUSTION OF ADMINISTRATIVE REMEDIES

28. No statute conditions habeas relief under 28 U.S.C. § 2241 on exhaustion of administrative remedies in immigration detention cases. Any exhaustion requirement is therefore prudential, and this Court may waive it where administrative remedies are inadequate or futile, where requiring exhaustion would cause irreparable injury, or where the issue presented is a purely legal question that the agency cannot resolve. *See Laing v. Ashcroft*, 370 F.3d 994, 1000-01 (9th Cir. 2004); *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017).

29. Those conditions are satisfied. The questions whether ICE possessed statutory authority under § 1226(a) or § 1357(a)(2) to arrest and detain Ms. Lin, whether her seizure at a compelled government appointment comported with the Fourth and Fifth Amendments, and whether Respondents' policy is arbitrary and contrary to law under the APA are questions of law that an immigration judge may not resolve. An immigration judge conducting a custody redetermination under 8 C.F.R. §§ 236.1(d)(1) and 1003.19 decides whether to detain, to release, and in what amount to set bond. An immigration judge cannot adjudicate the legality of the arrest that produced the custody, cannot declare a statute or agency policy unlawful, cannot grant relief under the APA, and cannot issue a declaratory judgment. Setting a bond, moreover, would not answer Ms. Lin's

contention; it would require her to purchase release from a restraint she says the government had no power to impose.

30. Requiring exhaustion would also inflict irreparable injury. Every day of unlawful confinement is an injury that no later ruling can undo. *See Hernandez*, 872 F.3d at 994-95. To the extent *Leonardo v. Crawford*, 646 F.3d 1157, 1160-61 (9th Cir. 2011), requires a petitioner to exhaust before asking a district court to review an immigration judge's discretionary bond determination, it does not govern here, because Ms. Lin does not ask this Court to review the exercise of discretion in any bond decision. Counsel will promptly advise the Court of any development in the immigration proceedings bearing on the relief requested here.

## VII. LEGAL FRAMEWORK

### A. Pre-removal detention under INA § 236(a) is predicated on an arrest made on a warrant.

31. Section 236(a) of the INA opens with the predicate on which the detention authority rests: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Only after that predicate is satisfied does the statute provide that, "pending such decision," the Attorney General "may continue to detain the arrested alien" or "may release the alien" on bond of at least $1,500 or on conditional parole. *Id.* § 1226(a)(1)-(2). The regulations implement the predicate rather than dispense with it: a warrant of arrest "may be issued only by those immigration officers listed in § 287.5(e)(2) of this chapter and may be served only by those immigration officers listed in § 287.5(e)(3) of this chapter." 8 C.F.R. § 236.1(b)(1).

32. Congress supplied one alternative route into that custody, and hedged it with conditions. Section 287(a)(2) authorizes an officer, without a warrant, "to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). The two conditions are joined by the word "and," and both must be met. The implementing regulation makes the warrant the default and the warrantless arrest the exception: an arrest may be made "only when the designated immigration officer has reason to believe that the person to be arrested . . . is an alien illegally in the United States," 8 C.F.R. § 287.8(c)(2)(i), and "[a] warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained," *id.* § 287.8(c)(2)(ii).

33. Read together, these provisions describe a closed set. A noncitizen may be taken into pre-removal custody on a warrant, or without one upon a qualifying escape-risk determination. The INA supplies no third path for a person in Ms. Lin's position, and if neither route was taken it falls to Respondents to identify some other statutory authority for the seizure and the custody that followed. That structure matters to the remedy Ms. Lin seeks, because it means the lawfulness of her present confinement does not depend on any theory of taint or derivative evidentiary suppression. It depends on whether Respondents can point to a statutory source for the custody they are exercising.

**B. The escape-risk determination must be individualized, made before the arrest, and supported by probable cause.**

34. "The federal statutory structure instructs when it is appropriate to arrest an alien during the removal process," and that authority is expressly "more limited" where no federal warrant has issued. *Arizona v. United States*, 567 U.S. 387, 407 (2012). Three settled principles govern the required finding. First, in this Circuit "[t]he phrase 'has reason to believe' has been equated with the constitutional requirement of probable cause." *Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). Second, probable cause must be "particularized with respect to that person"; it cannot be established by pointing to circumstances that happen to be true of a group, a place, or a category of people. *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979). Third, "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). A justification assembled afterward, or narrative language composed afterward, cannot supply what the officer did not know when he acted.

35. The escape-risk requirement carries independent content. Treating unlawful presence as itself supplying it would read the statute's second condition out of existence. As this Court reasoned in construing the identical language, "[t]o permit an officer to make the required likelihood of escape determination simply by determining that an individual is unlawfully present in the United States would render the language regarding the likelihood of escape determination superfluous," contrary to the rule against surplusage. *Vasquez Perdomo*, ECF No. 738, at 34 (citing *In re Saldana*, 122 F.4th 333, 342-43 (9th Cir. 2024)).

36. The Ninth Circuit has rejected § 1357(a)(2) as a basis for a civil arrest on this ground. In *Mountain High Knitting, Inc. v. Reno*, 51 F.3d 216 (9th Cir. 1995), the court explained that "the

plain language of 8 U.S.C. § 1357(a)(2), which grants INS officers the power to make warrantless civil deportation arrests, forecloses the possibility of a permissible civil arrest under these circumstances," because "the INS did not allege nor do appellants concede the existence of grounds for a reasonable belief that they were particularly likely to escape." *Id.* at 218. Ms. Lin cites *Mountain High Knitting* for that proposition alone. She does not contend, and the case does not hold, that arrest at any particular kind of location categorically forecloses an escape-risk finding. *See Vasquez Perdomo*, ECF No. 738, at 37 (declining to read the case that broadly).

**C. Ms. Lin was admitted, and her detention is governed by INA § 236(a).**

37. "Admission" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A). Ms. Lin was inspected and admitted on a nonimmigrant visa in or about May 2026. She is therefore not an "applicant for admission" under 8 U.S.C. § 1225(a)(1), and § 1225(b) has no application to her. As the Supreme Court has explained, "§ 1225(b) applies primarily to aliens seeking entry into the United States," whereas "§ 1226 applies to aliens already present in the United States." *Jennings*, 583 U.S. at 297, 303. Because she was admitted, she is not subject to expedited removal under 8 U.S.C. § 1225(b)(1), which reaches only noncitizens who are arriving or who have "not been admitted or paroled," and *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which concerns noncitizens present without admission, does not reach her on its own terms.

38. Binding Circuit precedent confirms the point. In *Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026), the Ninth Circuit held that even noncitizens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A), reasoning that the phrase "seeking admission" requires that the person "be engaged in the affirmative process of attempting to gain 'entry' 'into' the country, which an alien does at the border." The court observed that § 1226(a) applies as a matter of course "to aliens who are admitted into the United States and later become removable." Ms. Lin, who was admitted, falls within § 1226(a) on any reading. She is not subject to mandatory detention under 8 U.S.C. § 1226(c), which reaches noncitizens inadmissible or deportable on enumerated criminal and security grounds and, since 2025, certain noncitizens inadmissible under § 1182(a)(6)(A), (6)(C), or (7) who have been charged with, arrested for, or convicted of enumerated offenses. Ms. Lin was admitted, has no criminal history, and has never been arrested for any offense.

**D. The asylum statute and regulations require an applicant to appear for biometrics and provide for referral, not arrest.**

39. Congress has provided that "[a]ny alien who is physically present in the United States . . . irrespective of such alien's status, may apply for asylum." 8 U.S.C. § 1158(a)(1). Congress has also provided that asylum cannot be granted until the applicant's identity has been checked against government records and databases. *Id.* § 1158(d)(5)(A)(i). The collection of fingerprints is how that check is performed, and the regulations make the applicant's cooperation mandatory: "Failure to comply with fingerprint processing requirements without good cause may result in dismissal of the application or waiver of the right to an adjudication by an asylum officer." 8 C.F.R. § 208.10. An affirmative asylum applicant thus has no lawful way to pursue her application except to appear when and where USCIS tells her to appear.

40. The regulations also prescribe what happens to an affirmative applicant whose application USCIS does not grant. If the applicant appears to be inadmissible or deportable, the asylum officer refers the application to an immigration judge for adjudication in removal proceedings. 8 C.F.R. § 208.14(c)(1). If the applicant is maintaining valid nonimmigrant status, the asylum officer denies the application and no proceedings are commenced. *Id.* § 208.14(c)(2). The Department's most recent amendment to these regulations, an interim final rule that took effect on July 28, 2026, enlarged USCIS's authority to refer certain applications to immigration court without an interview. *See* Affirmative Asylum Referrals Without Interview, 91 Fed. Reg. 47,101 (July 28, 2026). In doing so the Department described its long-standing practice of offering an interview to every person who files a Form I-589, and it changed that practice by notice in the Federal Register. Neither before nor after that amendment has any provision of Part 208 authorized or contemplated the arrest of an applicant at a biometrics appointment. The mechanism the regulations prescribe for placing an applicant before an immigration judge is referral by charging document, with the applicant at liberty.

**E. The warrantless-arrest practice at issue was under injunction in this District when Ms. Lin was seized.**

41. On January 28, 2026, then-Acting ICE Director Todd Lyons issued a memorandum to ICE personnel titled "Civil Immigration Arrest Authority: Administrative Arrest Warrants and Warrantless Arrests" (the "Lyons Memorandum"). As described in this Court's findings, the memorandum stated that a person is "likely to escape" if an immigration officer determines that

he or she is "unlikely to be located at the scene of the encounter or another clearly identifiable location once an administrative warrant is obtained," and suggested that a noncitizen's "failure to comply with the immigration laws of the United States or unwillingness to cooperate with an immigration officer's lawful authority to enforce those laws may support the conclusion that the [noncitizen] is likely to escape." *Vasquez Perdomo*, ECF No. 738, at 33-34 (quoting Lyons Memorandum at 4). The memorandum also directed that, following a warrantless arrest, "officers and agents *shall* document in the narrative section of the Form I-213, Record of Deportable/Inadmissible Alien, all factors considered in determining that the alien was likely to escape before a warrant could be obtained." *Id.* at 48 (quoting Lyons Memorandum at 5).

42. In *Vasquez Perdomo*, this Court examined how that instruction was implemented in this District. On a developed preliminary-injunction record, the Court found that the plaintiffs had shown a likelihood of success in establishing that the federal immigration agencies "operate a coordinated set of policies concerning escape risk assessments, three of which, no escape risk assessment, escape risk assessment based solely on unlawful status, and escape risk assessment based on false assertions; operate in tandem to support the stated goal of arresting everyone without lawful status, thereby avoiding the escape risk assessment requirement." ECF No. 738, at 31. The Court concluded that the plaintiffs were "likely to succeed in showing that the Government's Escape Risk Policy violates the clear dictates of Section 1357 and its corresponding regulation in violation of the APA," and that the Lyons Memorandum, "to the extent that it suggests unlawful status alone can satisfy the likelihood of escape analysis, is contrary to Section 1357." *Id.* at 33.

43. On September 2, 2026, the Court entered a preliminary injunction providing in relevant part:

> 1. Defendants are enjoined from enforcing their policy and practice of making warrantless civil immigration arrests in this District without a prearrest individualized determination by the arresting agent or officer of probable cause that the person being arrested is likely to escape before a warrant can be obtained, as required by 8 U.S.C. 1357(a)(2) and 8 C.F.R. § 287.8(c)(2).
>
> 2. In considering the likelihood of a person's escape before a warrant can be obtained for their arrest, an immigration agent or officer must consider the totality of the circumstances known to the agent or officer before making the arrest. . . . Mere presence within the United States in violation of United States immigration law is not, by itself, sufficient to conclude that a person is likely to escape before a warrant for arrest can be obtained.

> 3. Defendants are further enjoined from relying on the escape risk standard or analytical approach set forth in the [Lyons Memorandum] . . . to the extent that it suggests that unlawful status alone suffices to create a likelihood of escape.
>
> 4. In cases where Defendants proceed to make a warrantless civil immigration arrest in this District, Defendants must document, as soon as practicable, the facts and circumstances surrounding the warrantless civil immigration arrest in narrative form, including: a. That the individual was arrested without a warrant; b. The specific, particularized facts that supported the agent's or officer's prearrest probable cause to believe that the person was likely to escape before a warrant could be obtained.

*Vasquez Perdomo*, ECF No. 738, at 53-54. The Court denied the defendants' request for a stay. *Id.* at 54. Ms. Lin was arrested in this District on September 21, 2026, nineteen days after the injunction issued. Ms. Lin does not contend that *Vasquez Perdomo* finally adjudicated anyone's liability. She cites it for its reasoning on the meaning of § 1357(a)(2), which is persuasive and directly on point, and for the fact that the practice at issue was under injunction in this District on the day she was seized.

## VIII. STATEMENT OF FACTS

### A. Ms. Lin's lawful admission and her asylum application.

44. Ms. Lin is a native and citizen of the People's Republic of China. In or about May 2026 she presented herself at a United States port of entry, was inspected by an immigration officer, and was admitted to the United States on a nonimmigrant visa.

45. After her admission Ms. Lin filed with USCIS a Form I-589, Application for Asylum and for Withholding of Removal. USCIS accepted the application and assigned it Receipt Number LGL2690076775 and Alien Registration Number A242-523-801. In filing the application Ms. Lin gave the government her residential address, 321 Pasadena Avenue, Apartment A, South Pasadena, California 91030, and affirmatively placed herself within the immigration system. She filed well within one year of her arrival, as 8 U.S.C. § 1158(a)(2)(B) requires.

46. Ms. Lin has no criminal history. She has never been arrested for, charged with, or convicted of any criminal offense. On information and belief, she has no prior removal order, no history of using false documents or false identities, and no record of failing to appear for any court, agency, or immigration appointment.

### B. The government's notice directing Ms. Lin to appear.

47. On September 4, 2026, USCIS issued to Ms. Lin a Form I-797C, Notice of Action, captioned "ASC Appointment Notice," and mailed it to her South Pasadena address. The notice

identified the case type as "I589 - Application for Asylum and for Withholding of Removal." It directed Ms. Lin to appear at the Application Support Center identified as "USCIS El Monte," 17843 Colima Road, City of Industry, California 91748, on September 21, 2026, at 9:00 a.m.

48. The notice stated its purpose in its first sentence: "To process your application, petition, or request, the U.S. Citizenship & Immigration Services (USCIS) must collect your biometrics. Please appear at the below Application Support Center (ASC) at the date and time specified." It then warned Ms. Lin of the consequences of not appearing: "Unless USCIS excuses you based on exceptional circumstances, failure to appear at this biometrics appointment will result in an applicant-caused delay that will impact your eligibility for employment authorization based on your pending asylum application. If you fail to appear at this appointment as scheduled, USCIS: (1) may dismiss your asylum application, if you maintain a lawful basis to remain in the United States; or (2) may refer your application to an immigration judge, if you do not maintain a lawful basis to remain in the United States." The notice instructed her to bring the notice itself and photo identification.

49. The notice said nothing about arrest or detention. It described the worst consequence that could follow from *failing* to appear as dismissal of the application or its referral to an immigration judge. It did not tell Ms. Lin that *appearing* could result in her being taken into custody.

**C. The warrantless arrest of September 21, 2026.**

50. Ms. Lin appeared at the Application Support Center on September 21, 2026, as the notice directed. She was arrested there by immigration officers who, on information and belief, were officers of ICE Enforcement and Removal Operations.

51. The officers did not show Ms. Lin a warrant of arrest. On information and belief, no warrant of arrest on Form I-200 had been issued for Ms. Lin before she was seized.

52. On information and belief, the arresting officers made no prearrest determination that Ms. Lin was likely to escape before a warrant could be obtained. On information and belief, Ms. Lin did not flee, did not attempt to flee, and did not disobey any command. She was at a federal facility, at an appointment the government had scheduled, in response to the government's written notice. On information and belief, the Form I-213 prepared in connection with her arrest contains no particularized escape-risk analysis.

53. The absence of a documented escape-risk analysis is itself probative. ICE's own directive requires that, following a warrantless arrest, officers "shall document in the narrative section of

the Form I-213 . . . all factors considered in determining that the alien was likely to escape before a warrant could be obtained." Lyons Memorandum at 5. This Court has described that documentation as "necessary for any court to litigate any challenges to arrests" and has ordered the agency "to properly document each arrest in the I-213 just as they are instructed to do in the Lyons Memo." *Vasquez Perdomo*, ECF No. 738, at 48-49. Where the agency's own contemporaneous record of an arrest contains no escape-risk analysis, the reasonable inference is that none was made.

54. On information and belief, Ms. Lin's arrest was not a chance encounter. DHS itself selected the date, the hour, and the place of the appointment seventeen days in advance. On information and belief, ICE officers were present at the Application Support Center because USCIS had informed ICE that Ms. Lin would be there, pursuant to a policy or practice under which USCIS notifies ICE of applicants' scheduled appointments so that ICE may arrest them when they appear. Public reporting describes written guidance to some USCIS offices instructing personnel to notify ICE when a person of interest comes in for an interview, and a USCIS spokesman responded to that reporting by stating that "aliens must respect our laws or face the consequences." *See* Brittany Gibson, *ICE traps immigrants at green card interviews*, Axios (Dec. 23, 2025). Respondents have published no policy, rule, or notice announcing that practice or explaining it.

**D. Ms. Lin's custody.**

55. Following her arrest, Ms. Lin was taken into ICE custody and is now confined at the Adelanto ICE Processing Center in Adelanto, San Bernardino County, California. She has been detained continuously since September 21, 2026. Absent an order of this Court, Respondents may transfer her to a facility outside this District at any time, which would separate her from counsel and impair this Court's ability to afford effective relief.

56. DHS has served Ms. Lin with a Notice to Appear, the charging document by which removal proceedings under 8 U.S.C. § 1229a are initiated. On information and belief, no individualized assessment of danger or flight risk preceded either the arrest or the custody determination.

57. Ms. Lin's asylum claim remains pending. She retains the right to have it heard, including before an immigration judge in removal proceedings, and she intends to pursue it. If released she intends to return to her residence in South Pasadena, to appear at every hearing, and to comply with any condition of supervision this Court or the agency imposes.

# IX. CLAIMS FOR RELIEF

## COUNT I

### Warrantless Arrest and Detention Without Statutory Authority, in Violation of 8 U.S.C. §§ 1357(a)(2) and 1226(a) and 8 C.F.R. §§ 287.8(c)(2), 236.1(b)

### (Habeas Corpus, 28 U.S.C. § 2241 — Immediate Release)

58. Ms. Lin realleges and incorporates by reference each of the foregoing paragraphs.

59. Ms. Lin was arrested without a warrant. The only statute that authorizes a warrantless civil immigration arrest in the interior of the United States is 8 U.S.C. § 1357(a)(2), and it imposes two conditions joined by the word "and": the officer must have reason to believe that the person "is in the United States in violation of" the immigration laws, and reason to believe that she "is likely to escape before a warrant can be obtained for [her] arrest." The regulation states the same rule as a command: a warrant "shall be obtained" unless the escape-risk belief exists. 8 C.F.R. § 287.8(c)(2)(ii). "Reason to believe" means probable cause, *Tejeda-Mata*, 626 F.2d at 725, and the determination must be individualized and must be made before the arrest.

60. This Court has construed these provisions in exactly that way. In *Vasquez Perdomo*, the Court found the plaintiffs likely to succeed in showing that a practice of making warrantless arrests in this District with no escape-risk analysis, or with an analysis resting on unlawful status alone, "violates the clear dictates of Section 1357 and its corresponding regulation." ECF No. 738, at 33. Its injunction provides that "[m]ere presence within the United States in violation of United States immigration law is not, by itself, sufficient to conclude that a person is likely to escape before a warrant for arrest can be obtained," and it prohibits the defendants there, who include the Secretary of Homeland Security and the head of ICE, from making warrantless civil immigration arrests in this District "without a prearrest individualized determination by the arresting agent or officer of probable cause that the person being arrested is likely to escape before a warrant can be obtained." *Id.* at 53-54. On information and belief, that injunction was in force on September 21, 2026. Ms. Lin's arrest is the conduct it describes.

61. No such determination was made as to Ms. Lin, and on these facts none could have been. The statute asks whether the person is likely to escape "before a warrant can be obtained." That inquiry is necessarily about time: whether the interval needed to obtain a warrant is one in which this person will disappear. An administrative warrant of arrest is not issued by a court. It is issued within the agency itself, by an immigration officer the regulations authorize to sign it. 8 C.F.R. §§

236.1(b)(1), 287.5(e)(2). Here the government had not minutes but seventeen days. On September 4, 2026, DHS fixed the date, the hour, and the street address at which Ms. Lin would be found on September 21, 2026. The question the statute poses is therefore a simple one: why could ICE not obtain an administrative warrant in the seventeen days before the appointment? If ICE planned to arrest her at that appointment, it had more than two weeks in which to have an authorized officer sign a warrant, and its failure to do so cannot be attributed to any risk that she would escape. If ICE did not plan the arrest in advance, then its officers knew nothing about Ms. Lin except that she was an asylum applicant who had come to a government office because the government told her to, which is evidence that she appears when summoned, not that she flees.

62. The facts known or readily available to the officers at the moment of arrest compel the same conclusion. *See Devenpeck*, 543 U.S. at 152. Ms. Lin had a fixed residential address, and the government knew it, because DHS had mailed the appointment notice there. She had an asylum application pending with DHS, which means the Department held her name, her address, and her alien registration number. She had no criminal history. She was at a federal facility at the government's direction. On information and belief, she did not run and did not resist. A person who files an application for protection, waits for the government's instructions, and follows them to the letter is not a person likely to escape in the time required to obtain an administrative warrant. Where the agency cannot allege "the existence of grounds for a reasonable belief that [the arrestee was] particularly likely to escape," the "plain language of 8 U.S.C. § 1357(a)(2) . . . forecloses the possibility of a permissible civil arrest." *Mountain High Knitting*, 51 F.3d at 218.

63. To the extent any officer purported to make an escape-risk finding, it can have rested on nothing more than a belief that Ms. Lin lacked lawful status. That rationale cannot satisfy the statute, because reading unlawful presence to establish likelihood of escape would render the statute's second condition superfluous. *See Vasquez Perdomo*, ECF No. 738, at 34, 53-54. And the first condition is itself in doubt: Ms. Lin was admitted on a visa only four months before her arrest.

64. The unlawfulness of the arrest determines the lawfulness of the custody that followed. Congress authorized pre-removal detention on a stated predicate: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). No warrant was shown to Ms. Lin, and on information and belief none had issued before she was seized. Her detention must therefore rest either on a valid administrative warrant under § 1226(a) or on a lawful warrantless arrest

satisfying § 1357(a)(2). Because neither occurred, it falls to Respondents to identify some other statutory authority for the seizure and for the custody it produced, and the INA supplies none for a person who was admitted, is not an applicant for admission, and is subject to no order of removal.

65. Respondents may point to 8 C.F.R. § 287.3(d), which provides that after a warrantless arrest the agency will determine within forty-eight hours whether to continue custody and whether to issue a notice to appear and a warrant of arrest. That regulation governs what the agency must do after a warrantless arrest that the statute permits. It does not enlarge the circumstances in which such an arrest may be made, and it could not, because a regulation cannot dispense with a condition Congress wrote into the statute. A warrant prepared after the seizure records the agency's later decision to keep a person it has already taken; it does not convert a warrantless arrest into one made "[o]n a warrant."

66. Respondents also violated 8 C.F.R. § 287.8(c)(2)(ii), which they were bound to follow. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 266-68 (1954). In this Circuit a regulatory violation warrants relief where the regulation serves a purpose of benefit to the noncitizen and the violation prejudiced the interests the regulation protects. *United States v. Calderon-Medina*, 591 F.2d 529, 531 (9th Cir. 1979). Both conditions are met. The warrant requirement of § 287.8(c)(2)(ii) exists to protect individual liberty by interposing a measure of deliberation before a person is seized and confined, and Ms. Lin suffered precisely the injury it was designed to prevent: arrest and confinement without that deliberation.

**The remedy sought is release, and it does not depend on a theory of taint.**

67. Respondents may be expected to argue that a defect in an arrest does not entitle a noncitizen to release, invoking *INS v. Lopez-Mendoza*, 468 U.S. 1032 (1984). That argument answers a claim Ms. Lin does not make. *Lopez-Mendoza* held that the exclusionary rule generally does not apply in civil deportation proceedings and that "[t]he 'body' or identity of a defendant . . . is never itself suppressible as a fruit of an unlawful arrest." *Id.* at 1039, 1050. Those holdings govern what evidence may be used in a removal proceeding and whether such a proceeding may go forward. Ms. Lin seeks neither the suppression of evidence nor the termination of any proceeding. She does not ask this Court to disturb DHS's ability to pursue her removal, and the relief she seeks would leave Respondents free to do so. *Lopez-Mendoza* is thus not authority for release, and Ms. Lin does not cite it as such; the point is that it does not foreclose habeas review of whether Respondents presently possess statutory authority to confine her.

68. What Ms. Lin challenges is her present physical confinement, which is the historic subject of the writ. *See Preiser*, 411 U.S. at 484. The question habeas asks is not whether an earlier illegality taints later-acquired evidence; it is whether the petitioner "is in custody in violation of the Constitution or laws . . . of the United States" now. 28 U.S.C. § 2241(c)(3). Section 2243 places on Respondents the obligation to make a return "certifying the true cause of the detention." The cause they must certify is an arrest, because an arrest is how a person enters § 1226(a) custody. If that arrest was not made on a warrant and did not satisfy § 1357(a)(2), then the detention rests on no statutory authority at all, and the deficiency is not a historical defect but a present one that continues for every day Ms. Lin remains confined.

69. At least one district court confronting this question has ordered release on that reasoning. *See Perez Juarez v. Guadian*, Civ. No. 26-3109-BAH, slip op. at 7-9 (D. Md. Sept. 4, 2026) (ordering immediate release of a noncitizen admitted on a B-2 visa who was arrested without a warrant, where the Form I-200 issued only after the arrest and the arrest was not authorized by § 1357(a)(2)). Other courts, without addressing § 1357(a)(2), have ordered immediate release on the ground that § 1226(a) itself requires a warrant. *See, e.g.*, *Mayen v. Warden, California City Detention Center*, No. 1:26-cv-02354-DAD, slip op. at 3-4 (E.D. Cal. Apr. 28, 2026) (adopting findings and recommendations that also rested on due process, and ordering immediate release where the record contained no evidence that the petitioner had been arrested pursuant to a warrant). Ms. Lin acknowledges that the Ninth Circuit has not squarely addressed whether an arrest made in violation of § 1357(a)(2) requires release from the detention that follows, that *Mountain High Knitting* establishes that such an arrest is impermissible without reaching the remedy, and that at least one court in this Circuit has reached the contrary conclusion. *See Garcia Juarez v. LaRose*, No. 3:26-cv-03991, slip op. at 7 (S.D. Cal. Aug. 10, 2026) (reasoning from *Lopez-Mendoza* that release is not a remedy for an unlawful immigration arrest and ordering a bond hearing instead). Respectfully, that reasoning treats a question about custody as though it were a question about suppression. The absence of an exclusionary remedy in the removal proceeding does not supply the statutory authority for confinement that Respondents lack. Where the executive detains a person and can identify no statute authorizing the detention, release is the ordinary habeas remedy, and it is the only remedy that ends the violation. A ruling that an unauthorized seizure may nonetheless support continued confinement would make the conditions Congress wrote into §§ 1226(a) and 1357(a)(2) unenforceable in the one setting where they matter most.

70. Nothing that has occurred since September 21, 2026 has supplied the missing authority. A later bond determination would not retroactively create the statutory predicate for an arrest that satisfied neither § 1226(a) nor § 1357(a)(2); it would at most substitute a new custodial decision for an unlawful one going forward, which is why Ms. Lin seeks release now and pleads the alternative custody-hearing relief in Count V only if this Court declines it.

71. Ms. Lin is therefore in custody in violation of the laws of the United States, and the writ should issue directing her immediate release.

**COUNT II**

**Violation of the Fourth Amendment — Unreasonable Seizure**

**(Habeas Corpus, 28 U.S.C. § 2241 — Immediate Release)**

72. Ms. Lin realleges and incorporates by reference each of the foregoing paragraphs.

73. The Fourth Amendment protects the right of the people to be secure in their persons against unreasonable seizures. Where a specific constitutional provision addresses the conduct challenged, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Graham v. Connor*, 490 U.S. 386, 395 (1989). Ms. Lin therefore pleads her challenge to the seizure itself under the Fourth Amendment, and pleads separately in Count III the distinct due process violations arising from her confinement.

74. The Fourth Amendment applies to civil immigration arrests. "[T]he Fourth Amendment requires probable cause to seize or detain an individual for a civil immigration offense." *Gonzalez v. U.S. Immigration & Customs Enf't*, 975 F.3d 788, 817 (9th Cir. 2020). Probable cause is measured by "the facts known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152. And because the "reason to believe" standard of § 1357(a)(2) "has been equated with the constitutional requirement of probable cause," *Tejeda-Mata*, 626 F.2d at 725, the statutory and constitutional inquiries converge on a single question: what the officers knew about Ms. Lin when they seized her.

75. On information and belief, the arresting officers lacked probable cause to believe that Ms. Lin was removable. She had been inspected and admitted on a visa approximately four months earlier. She was at a USCIS facility pursuing an application that Congress permits any person physically present in the United States to file "irrespective of such alien's status," 8 U.S.C. § 1158(a)(1), so that the filing of the application is not evidence of unlawful presence.

76. The Fourth Amendment also "requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975). An officer's on-the-scene assessment may justify an arrest and a brief period of detention, but "[o]nce the suspect is in custody . . . the reasons that justify dispensing with the magistrate's neutral judgment evaporate." *Id.* The Ninth Circuit has rejected the contention that *Gerstein* does not apply in the civil immigration context, holding that "the Fourth Amendment requires a prompt probable cause determination by a neutral and detached magistrate to justify continued detention pursuant to an immigration detainer." *Gonzalez*, 975 F.3d at 824-26. Ms. Lin recognizes that *Gonzalez* arose from detention on immigration detainers and that the court remanded for application of the standard it announced. Its reasoning nonetheless applies with full force to a person who was seized without a warrant and has been held ever since. On information and belief, no neutral and detached decisionmaker has determined that probable cause supported Ms. Lin's seizure; the only determinations made have been those of the arresting agency itself.

77. The violation is not confined to the moment of arrest. "The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause," and detention "can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case." *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017). *Manuel* arose from a criminal prosecution, but the principle it states concerns seizures of the person, and Ms. Lin's present confinement is a continuing seizure that began with a warrantless arrest and has never been reviewed by a neutral decisionmaker.

78. Ms. Lin does not contend that every departure from a statutory limit on arrest authority is, without more, a violation of the Fourth Amendment. *Cf. Virginia v. Moore*, 553 U.S. 164, 176 (2008) (state-law restrictions on arrest do not alter the Fourth Amendment's protections). Her claim is that the seizure lacked probable cause and has gone without neutral review. Nor does this count depend on the exclusionary rule. For the reasons stated in Count I, *Lopez-Mendoza* addresses the suppression of evidence in removal proceedings and does not foreclose habeas review of present custody, which 28 U.S.C. § 2241(c)(3) extends to any person "in custody in violation of the Constitution." Ms. Lin acknowledges that courts have differed on whether an unlawful immigration arrest, standing alone, warrants release, *see Garcia Juarez*, slip op. at 7, and she pleads this count together with Count I, under which the same seizure leaves Respondents without statutory authority for her detention.

79. Ms. Lin's seizure and continuing detention violate the Fourth Amendment, and the writ should issue directing her release.

## COUNT III

### Violation of the Due Process Clause of the Fifth Amendment

### (Habeas Corpus, 28 U.S.C. § 2241 — Immediate Release)

80. Ms. Lin realleges and incorporates by reference each of the foregoing paragraphs.

81. The Fourth Amendment governs the reasonableness of the seizure itself, and Ms. Lin pleads that claim in Count II. This count addresses two deprivations of a different kind, each of which the Due Process Clause independently forbids: confinement that has never been supported by any individualized determination of flight risk or danger, and the government's use of its own compulsory process to penalize the person who complied with it.

82. The Due Process Clause forbids the federal government from depriving any person of liberty without due process of law, and its protections extend to all persons within the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). Civil detention is constitutionally permissible only in narrow, nonpunitive circumstances in which a special justification outweighs the individual's interest in avoiding physical restraint, and in the immigration setting the justifications the Supreme Court has identified are preventing flight and protecting the community. *Zadvydas*, 533 U.S. at 690-91; *see United States v. Salerno*, 481 U.S. 739, 746-52 (1987). The touchstone of due process is "protection of the individual against arbitrary action of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998) (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)).

**A. Ms. Lin is confined without any individualized determination of flight risk or danger.**

83. Ms. Lin was at liberty in the United States following a lawful admission. She was seized and has been confined without any officer having assessed whether she is dangerous or whether she would fail to appear. The only judgment that appears to have been made about her is that she is removable. That is a determination about her status, not about her. A deprivation of physical liberty imposed by operation of a categorical rule, rather than by an assessment of the particular

person detained, bears no reasonable relation to the two purposes that alone can justify civil immigration detention.

84. The balancing framework of *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), confirms the deficiency. Ms. Lin's private interest is her physical liberty, the most elemental of liberty interests, together with her ability to prepare and present an asylum claim on which her safety depends. The risk of erroneous deprivation under the procedure actually used is severe. Where the operative fact is removability alone, the process cannot distinguish a person who will abscond from an asylum applicant with a fixed address and no criminal record who appeared when and where the government directed her. Indeed, the only individualized fact the officers possessed about Ms. Lin pointed away from detention: she had just appeared, on time, at a government office, in response to a government notice. The government's countervailing interest is slight, because the facts that make Ms. Lin a poor candidate for detention also make her easy to locate and easy to supervise, and because Congress has expressly authorized release on bond or conditional parole under 8 U.S.C. § 1226(a)(2). The additional safeguard Ms. Lin says was required, an individualized assessment before the seizure, is the same one Congress already wrote into § 1357(a)(2) and the Department already wrote into 8 C.F.R. § 287.8(c)(2)(ii); honoring it would have cost the government nothing it was not already obliged to do.

85. Ms. Lin recognizes that in *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022), the Ninth Circuit held that the existing procedures governing a § 1226(a) bond hearing, including placement of the burden on the detainee, satisfied due process as applied to a petitioner who had received a bond hearing. *Rodriguez Diaz* forecloses any contention that due process categorically requires the government to bear the burden by clear and convincing evidence at an ordinary § 1226(a) hearing, and Ms. Lin advances no such contention. *Rodriguez Diaz* is nonetheless distinguishable on the claim she does press. The petitioner there had received a custody determination; Ms. Lin challenges the absence of any determination at the point of seizure. The court there addressed the sufficiency of an existing procedure, and it expressly declined to "foreclose all as-applied challenges to § 1226(a)'s procedures." 53 F.4th at 1213. This is such a challenge: the deprivation began with a seizure that departed from the statute governing when it could be made at all, carried out at an appointment the government itself had compelled.

**B. Using an appointment the government compelled Ms. Lin to attend as the occasion for her detention is arbitrary and fundamentally unfair.**

86. The means by which the government obtained custody of Ms. Lin independently violates due process. The government did not encounter Ms. Lin. It summoned her. It told her, in writing, that she had to appear for fingerprinting in order for her application to be processed, and that if she did not appear her application could be dismissed or referred to an immigration judge. 8 C.F.R. § 208.10 says the same. Ms. Lin thus faced a choice the government constructed: stay away and forfeit the application Congress entitled her to file, or appear and, as it turned out, forfeit her liberty. She was not told of the second consequence. She was told only of the first.

87. The Due Process Clause does not permit the government to exact a penalty for conduct that the government itself directed. In *Raley v. Ohio*, 360 U.S. 423 (1959), the Supreme Court held that a State may not punish a person for doing what a state official told him he was entitled to do, describing that course as "the most indefensible sort of entrapment by the State." *Id.* at 438; *accord Cox v. Louisiana*, 379 U.S. 559, 571 (1965). Those cases arose from criminal prosecutions, and Ms. Lin does not suggest that they control by their terms. The principle on which they rest is nonetheless a principle of due process, not of criminal procedure: government may not induce a person to act in reliance on its own official direction and then treat the act as the occasion for depriving her of liberty. That principle applies with at least equal force where, as here, the government did not merely permit the conduct but required it, and where the deprivation is physical confinement.

88. The detention is arbitrary in the constitutional sense for a further reason. Civil immigration detention is justified, if at all, by the risk that a person will not appear or will endanger others. Arresting applicants because they appear inverts that logic. It selects for detention the very people who have demonstrated that detention is unnecessary to secure their appearance, and it does so on the basis of a characteristic, compliance, that is the opposite of the conduct detention exists to prevent. Government action that operates in direct opposition to its only permissible purpose is arbitrary. The practice also burdens the statutory right to seek asylum, because an applicant cannot pursue an affirmative application without submitting to biometrics, and it undermines the identity-verification scheme Congress enacted in 8 U.S.C. § 1158(d)(5)(A)(i) by teaching applicants that compliance is dangerous.

89. Federal courts across the country have recognized these concerns when the government has detained noncitizens at the appointments and hearings it required them to attend. *See, e.g.*, *España v. Nessinger*, No. 26-cv-014-JJM-PAS, slip op. at 3, 30-31 (D.R.I. Mar. 25, 2026) (ordering, on a renewed motion to enforce an earlier order, the immediate release of an asylum seeker whom ICE had arrested at the conclusion of his asylum interview at a USCIS field office); *Medellin Hernandez v. Mullin*, No. 26-cv-22766-JB (S.D. Fla. May 5, 2026) (granting habeas relief to a petitioner taken into ICE custody at his Form I-589 interview, holding that § 1226(a) governed his detention, and ordering an individualized bond hearing or release); *Chaudhari v. Mullin*, Civ. No. 26-13391-MJJ (D. Mass. July 24, 2026) (temporary restraining order prohibiting the government from arresting or detaining the plaintiff "in connection with his scheduled biometrics appointment"); *Garro Pinchi v. Noem*, No. 5:25-cv-05632-PCP (N.D. Cal. July 24, 2025) (preliminary injunction barring re-detention, absent a pre-deprivation hearing, of a noncitizen arrested upon leaving an immigration court hearing). These decisions are persuasive rather than binding, they arise from differing procedural postures, and Ms. Lin cites them for the common recognition that due process is implicated when a person's compliance with the government's own process becomes the occasion for her detention.

90. Ms. Lin's confinement violates the Fifth Amendment. Because the constitutional defect lies in the means by which custody was obtained and in the absence of any individualized justification for continuing it, the appropriate remedy is release. And because release would restore a liberty interest that the government may not again take without process, any re-detention of Ms. Lin during her removal proceedings should be preceded by a warrant and by notice and a hearing before a neutral decisionmaker. *See Mathews*, 424 U.S. at 335; *Mayen*, slip op. at 4 (ordering immediate release and enjoining re-detention, absent exigent circumstances, without notice and a pre-detention hearing).

## COUNT IV

### Violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)

### (Action Contrary to Law and in Excess of Statutory Authority; Arbitrary and Capricious Agency Action; Unexplained and Inconsistent Policy)

91. Ms. Lin realleges and incorporates by reference each of the foregoing paragraphs.

92. The APA directs a reviewing court to hold unlawful and set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary

to constitutional right, power, privilege, or immunity," "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," or taken "without observance of procedure required by law." 5 U.S.C. § 706(2)(A)-(D).

**A. The agency action challenged.**

93. Ms. Lin challenges two agency actions. The first, and the principal one, is the decision to arrest and detain Ms. Lin herself, including the custody determination continuing her detention. The second, pleaded on information and belief, is the policy and practice under which DHS uses the appointments that USCIS requires asylum applicants to attend as the occasion for ICE to arrest them without a warrant and without any individualized assessment of escape risk, flight risk, or danger (the "Appointment Arrest Policy"). That policy is the application, in the specific setting of USCIS appointments, of the warrantless-arrest practice this Court has described as the Escape Risk Policy.

94. Each is final agency action. The decision to arrest and detain Ms. Lin consummated the agency's decisionmaking as to her, and it is action "by which rights or obligations have been determined, or from which legal consequences will flow," because it resulted directly in her confinement. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal quotation marks omitted). The Appointment Arrest Policy likewise marks the consummation of the Department's decisionmaking about how applicants who appear for USCIS appointments are to be treated. That the policy is unpublished does not defeat finality; an agency may not insulate a practice from review by declining to write it down. This Court has concluded, in the litigation over the related practice, that the Escape Risk Policy was adequately established as final agency action. *Vasquez Perdomo*, ECF No. 738, at 31 n.17. Ms. Lin's claim does not depend on proof of the broader policy. Her arrest and the custody determination that followed are reviewable in their own right.

**B. The arrest and custody determination, and the policy they applied, are contrary to law and in excess of statutory authority.**

95. The arrest of Ms. Lin and the custody determination that followed are "not in accordance with law" and "in excess of statutory . . . authority." 5 U.S.C. § 706(2)(A), (C). Section 1357(a)(2) permits a warrantless arrest only upon an individualized, prearrest escape-risk finding, and § 287.8(c)(2)(ii) requires a warrant in the absence of one. For the reasons stated in Count I, Respondents proceeded without either. This Court has already found a likelihood of success on the claim that the warrantless-arrest policy operating in this District "violates the clear dictates of

Section 1357 and its corresponding regulation in violation of the APA." *Vasquez Perdomo*, ECF No. 738, at 33. To the extent Ms. Lin's arrest was made under that policy or under the Appointment Arrest Policy, the policy is unlawful for the same reason. For the reasons stated in Counts II and III, the challenged actions are in addition "contrary to constitutional right." 5 U.S.C. § 706(2)(B).

**C. The challenged actions are arbitrary and capricious because they are inconsistent with the agency's own position, regulations, and practice, and the agency has neither acknowledged nor explained the inconsistency.**

96. Agency action is arbitrary and capricious where the agency "entirely failed to consider an important aspect of the problem" or failed to articulate "a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). When an agency changes position, the requirement of reasoned explanation demands more. The agency must "display awareness that it is changing position" and "show that there are good reasons for the new policy"; it may not "depart from a prior policy *sub silentio*." *Fox Television*, 556 U.S. at 515. "[A]n unexplained inconsistency in agency policy is a reason for holding an interpretation to be an arbitrary and capricious change from agency practice." *Encino Motorcars*, 579 U.S. at 222 (internal quotation marks omitted). And an agency changing course must "be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 30 (2020) (internal quotation marks omitted). In the immigration setting in particular, agency policy must rest on factors relevant to "the purposes of the immigration laws or the appropriate operation of the immigration system." *Judulang v. Holder*, 565 U.S. 42, 55 (2011).

97. Respondents' conduct is arbitrary and capricious on either of two views of the facts. If, as Ms. Lin alleges on information and belief, the Department did not previously use the appointments it requires of asylum applicants as arrest sites, then its conduct is an unexplained departure from its established asylum-processing framework and practice. If instead the Department acted under an undisclosed enforcement policy, that policy is inconsistent with the statutory and regulatory warrant requirements, with the Department's own asylum regulations, and with the written notice it sent Ms. Lin, and it was adopted without acknowledgment or explanation. On either view the conduct is inconsistent in four respects, and none has been explained.

98. *First, the Department spoke to Ms. Lin with two voices at once.* Through USCIS, DHS told her in writing that her appearance on September 21, 2026 was required "[t]o process your

application," and it defined the consequences of non-appearance as dismissal of the application or its referral to an immigration judge. Through ICE, DHS treated her appearance at that same appointment as the occasion to arrest and imprison her. USCIS and ICE are components of a single Department under a single Secretary. A Department that summons a person to a specified place so that her application for protection may be processed, and then seizes her because she came, has not made a reasoned decision about how that person should be treated. It has adopted two contradictory positions and acted on both. The notice the Department drafted identifies the consequences it considered appropriate for an applicant who does not cooperate; the Department has offered no explanation of why an applicant who does cooperate should fare worse.

99. *Second, the conduct departs from the regulatory scheme the Department itself promulgated.* Part 208 of Title 8 prescribes the path of an affirmative asylum application from filing to disposition. The applicant must submit to fingerprinting. 8 C.F.R. § 208.10. If USCIS does not grant the application and the applicant appears removable, the application is referred to an immigration judge, 8 C.F.R. § 208.14(c)(1); if the applicant is in valid status, it is denied without referral, *id.* § 208.14(c)(2). When the Department decided in July 2026 to alter one feature of that scheme, the offer of an interview before referral, it did so by publishing an interim final rule that acknowledged its long-standing practice, stated its reasons for changing it, and invited comment. 91 Fed. Reg. 47,101. The Department has taken no comparable step with respect to arrests at biometrics appointments. No regulation authorizes them, and the regulations the Department has chosen to keep in force describe a process in which an applicant placed in removal proceedings is served with a charging document and appears before an immigration judge. An agency is bound by its own regulations, and "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures." *Morton v. Ruiz*, 415 U.S. 199, 235 (1974); *see Accardi*, 347 U.S. at 266-68.

100. *Third, on information and belief, the conduct departs without acknowledgment from the Department's prior practice and disregards the reliance that practice induced.* On information and belief, for decades the government did not use the fingerprinting appointments it requires of affirmative asylum applicants as arrest sites, and applicants, their counsel, and the agency itself organized the affirmative asylum system around that understanding. The reliance interests are serious and specific. An applicant who files a Form I-589 gives the government her address, her identity documents, her photograph, and her fingerprints, and she presents herself in person at a

time and place of the government's choosing. She does so because the government has told her that this is how protection is sought, and because nothing the government has said warns her that the price of compliance may be her liberty. Ms. Lin did exactly that. Respondents have never displayed awareness that they changed position, have never offered reasons for the change, and have never considered the reliance of the people affected. *Regents*, 591 U.S. at 30; *Fox Television*, 556 U.S. at 515.

101. *Fourth, the conduct is inconsistent with ICE's own written directive and with the regulation governing warrantless arrests.* The Lyons Memorandum instructs officers who make a warrantless arrest that they "shall document" the factors supporting an escape-risk determination, and 8 C.F.R. § 287.8(c)(2)(ii) commands that a warrant "shall be obtained" absent reason to believe the person is likely to escape. A practice of arresting applicants at prescheduled appointments, where the government has days or weeks of notice and the applicant is by definition present and cooperating, cannot be reconciled with either instruction. The agency has not attempted to reconcile them.

102. The challenged actions also fail the basic requirement of reasoned decisionmaking apart from any change in position. They entirely fail to consider important aspects of the problem: that arresting applicants at biometrics appointments deters compliance with the identity-verification step Congress made a precondition of any grant of asylum, 8 U.S.C. § 1158(d)(5)(A)(i); that doing so burdens the statutory right to apply for asylum conferred by § 1158(a)(1); that it selects for detention persons whose appearance demonstrates that detention is unnecessary; and that it treats similarly situated applicants differently according to nothing more than whether ICE officers happened to be present on the day of the appointment. Agency action that turns on such fortuities is not tied to "the purposes of the immigration laws or the appropriate operation of the immigration system." *Judulang*, 565 U.S. at 55.

**D. Reviewability.**

103. Ms. Lin is within the zone of interests protected by 8 U.S.C. §§ 1158, 1226(a), and 1357(a)(2) and by 8 C.F.R. §§ 208.10 and 287.8(c)(2), which exist respectively to afford persons in her position a means of seeking protection and to protect individuals from being seized without a warrant. The zone-of-interests test is "not especially demanding" in the APA context. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014); *see Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012). The challenged

action is not "committed to agency discretion by law" within the meaning of 5 U.S.C. § 701(a)(2), because § 1357(a)(2) and § 287.8(c)(2) supply the standard against which the agency's conduct is to be measured.

104. As to 5 U.S.C. § 704, Ms. Lin acknowledges that she seeks release through habeas in Counts I through III and that Respondents may contend habeas is an adequate remedy foreclosing APA review. Two points bear on that contention. First, the relief available under this count is not the same: the APA authorizes the Court to hold unlawful and set aside the arrest and custody determination, and the policy as applied to Ms. Lin, and to declare the governing legal standard, whereas the writ orders release. Second, if this Court were to conclude that some feature of the INA's review provisions limits the habeas relief sought in Counts I through III, the APA supplies an independent basis for setting aside the unlawful agency action, and in that event habeas would not be an adequate remedy. To the extent the Court concludes that the claims overlap, this count is pleaded in the alternative, and Ms. Lin does not seek duplicative relief.

105. The Court should hold unlawful and set aside the arrest of Ms. Lin and the custody determination continuing her detention, together with the Appointment Arrest Policy as applied to her, and should order her released from the custody that unlawful action produced.

**COUNT V**

**Alternative Relief — A Prompt and Lawful Custody Determination**

**(Pleaded Only If the Court Declines Immediate Release)**

106. Ms. Lin realleges and incorporates by reference each of the foregoing paragraphs. This count is pleaded only in the event the Court declines to order immediate release under Counts I through IV.

107. If Ms. Lin is not released, the Due Process Clause requires at a minimum that her confinement be justified through a prompt custody determination that actually considers her circumstances. *Hernandez v. Sessions* establishes that such a determination must take account of the detainee's financial circumstances and the availability of alternative conditions of release. 872 F.3d at 990-91, 993-94. That requirement survives *Rodriguez Diaz*, which described *Hernandez* as an application of *Mathews* and did not disturb it. *See Rodriguez Diaz*, 53 F.4th at 1206.

108. Ms. Lin does not ask this Court to impose a clear-and-convincing standard as a matter of course in every § 1226(a) hearing; *Rodriguez Diaz* holds that due process does not require that allocation in an ordinary case. She asks instead for relief tailored to the facts she has pleaded.

Where the government's initial deprivation of liberty was itself taken without statutory authority, at an appointment the government compelled, and where no custody assessment of any kind preceded it, requiring the detainee to carry the burden of undoing the consequences would place the cost of the government's own departure from the statute on the person it seized. *Rodriguez Diaz* expressly declined to foreclose as-applied challenges of this kind. Ms. Lin presents that narrower, fact-specific request here, and she does so in the alternative.

109. Ms. Lin accordingly requests, if the Court declines immediate release, that it order Respondents to provide her within seven days an individualized custody hearing before an immigration judge at which Respondents bear the burden of justifying her continued confinement on the basis of flight risk or danger, at which the immigration judge must consider her financial circumstances and the availability of alternatives to detention as *Hernandez* requires, and at which the circumstances of her arrest may be considered; and that the Court order her released forthwith if no such hearing is held within that period.

## X. PRAYER FOR RELIEF

WHEREFORE, Petitioner-Plaintiff Qingmei Lin respectfully requests that this Court:

1. Assume jurisdiction over this matter;
2. Issue an order to show cause forthwith, directing Respondents to show cause within three (3) days why the writ of habeas corpus should not be granted and to certify the true cause of Ms. Lin's detention, including whether any warrant of arrest existed before she was seized, pursuant to 28 U.S.C. § 2243;
3. **Issue a writ of habeas corpus ordering Respondents to release Ms. Lin immediately from custody on her own recognizance or on reasonable conditions of supervision;**
4. Declare that Ms. Lin's arrest on September 21, 2026 was made without the authority required by 8 U.S.C. §§ 1357(a)(2) and 1226(a) and 8 C.F.R. §§ 287.8(c)(2) and 236.1(b), and that her resulting detention is without statutory authorization;
5. Declare that Ms. Lin's warrantless seizure violated the Fourth Amendment, and that the use of a biometrics appointment the government required her to attend as the occasion for her detention, and her continued confinement without any individualized determination of danger or flight risk, violate the Due Process Clause of the Fifth Amendment;

6. Hold unlawful and set aside under 5 U.S.C. § 706(2) the arrest of Ms. Lin and the custody determination continuing her detention, together with, as applied to her, Respondents' policy and practice of arresting asylum applicants without a warrant at appointments USCIS requires them to attend;
7. Order that, upon release, Ms. Lin not be re-arrested or re-detained during the pendency of her removal proceedings except upon a warrant of arrest and after notice and a hearing before a neutral decisionmaker at which Respondents demonstrate that she presents a flight risk or a danger to the community;
8. In the alternative, and only if the Court declines immediate release, order Respondents to provide Ms. Lin within seven (7) days an individualized custody hearing before an immigration judge at which, on the facts of this case, Respondents bear the burden of justifying her continued detention, at which her financial circumstances and alternatives to detention are considered, and at which the circumstances of her arrest may be considered, and order her released forthwith if no such hearing is held within that period;
9. Enjoin Respondents from transferring Ms. Lin outside the Central District of California during the pendency of these proceedings absent prior order of this Court;
10. Award Ms. Lin her reasonable attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and on any other basis justified by law; and
11. Grant such other and further relief as this Court deems just and proper.

Dated: October 2, 2026

Respectfully submitted,

TEZ LAW FIRM, A Professional Corporation

By: ______________________

JJ Zhang, Esq. (SBN 326666)

Attorney for Petitioner-Plaintiff Qingmei Lin

## VERIFICATION

I, JJ Zhang, declare as follows:

1. I am an attorney licensed to practice law in the State of California and admitted to practice before this Court. I represent Petitioner-Plaintiff Qingmei Lin in this matter.

2. I make this verification on Ms. Lin's behalf pursuant to 28 U.S.C. § 2242, which permits a petition for a writ of habeas corpus to be signed and verified by a person acting on the petitioner's behalf. Ms. Lin is confined at the Adelanto ICE Processing Center and is unable to sign and file a verified petition herself within the time her circumstances require.

3. I have read the foregoing Petition for Writ of Habeas Corpus and Complaint for Declaratory and Injunctive Relief. The allegations describing the documents in my possession, including the Form I-797C notice dated September 4, 2026, are true of my own knowledge. The remaining factual allegations are made on information and belief, based on my communications with Ms. Lin and with persons acting on her behalf, and I believe them to be true.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 2, 2026, at West Covina, California.

JJ Zhang, Esq. (SBN 326666)